UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIN FARMER, | ) | CASE NO. 1:25-cv-00005 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| BIRTHING BEAUTIFUL | ) | **MEMORANDUM OPINION** |
| COMMUNITIES, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Birthing Beautiful Communities' ("BBC") Motion to Dismiss.  (Doc. 67.)  Plaintiff Christin Farmer ("Farmer") opposed (Doc. 70), and BBC replied (Doc. 72).  For the reasons below, BBC's Motion is DENIED.

I.      **BACKGROUND**

       A.      **Factual Allegations**

BBC is a Cleveland, Ohio, non-profit organization which provides perinatal support for minority and low-income women who have a high risk of infant death.  (Doc. 65-1 at 577, 579, ¶¶ 8, 15.)[1]  BBC also provides doula and social and emotional support services to pregnant women who otherwise would not have access to these critical resources during their pregnancies. (*Id.*)  Farmer founded BBC in October 2015.  (*Id.* at 579, ¶ 15.)  Prior to founding BBC, Farmer worked in community development and volunteered as a birth and postpartum doula.  (*Id.* at 578, ¶ 11.)  During this time, Farmer created a "perinatal support pipeline program and other materials related to the doula services she had been providing herself."  (*Id.* at 578, ¶ 12.)  In 2014 and

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

early 2015, Farmer used social media to identify other doulas of color who were interested in providing services to pregnant women referred through local hospitals.  (*Id.* at 578, ¶ 13.)  Five women responded.  (*Id.*)  In April 2015, Farmer began using the name "Birthing Beautiful Communities" to distinguish the source of care she provided.  (*Id.* at 578, ¶ 14.)

Shorly after, Farmer formalized her local community effort into a fully operating non-profit.  On July 16, 2015, Farmer registered "Birthing Beautiful Communities" as a trade name with the Ohio Secretary of State.[2]  (*Id.* at 578-79, ¶ 14.)  Farmer identified herself as the registrant.  (*Id.*)  Then, on October 6, 2015, Farmer commissioned a logo for BBC (the "B Logo," and together with "Birthing Beautiful Communities," the "Trademarked Works").  (*Id.*)  And on October 22, 2015, Farmer filed articles of incorporation with the Ohio Secretary of State to form BBC as a non-profit with her as the sole incorporator.  (*Id.* at 579, ¶ 15.)  As the registrant of the name "Birthing Beautiful Communities," Farmer provided consent to BBC to use the trade name.  (*Id.*)  Almost two years later, on June 2, 2017, Farmer organized a board of directors for BBC.  (*Id.*)  In June 2019, Farmer applied for copyright registration for various works she created in relation to her doula services.  (*Id.* at 579, ¶ 16.)  These works included pay models, policies and procedures, a social risk assessment, and a perinatal support pipeline program, among others.  (*Id.*)  Farmer identified first publication as June 1, 2014.  (*Id.*)  In August 2019, the Copyright Office issued registration certificates for the following works: Pay Models, BBC Policy & Procedures, Social Risk Assessment, Perinatal Support Pipeline, BIB (Because I'm Busy) Overview, and BBC Executive Summary (together the "Copyrighted Work").  (*Id.* at 579-80, ¶ 16; Doc. 65-3 at 601 (Certificate of Registration, TX 8-766-576).)

---

[2] That trade name expired because it was not renewed on July 16, 2020.  (Doc. 65-1 at 579, ¶ 14 n.1.)

Since its founding, Farmer served as president and chief executive officer of BBC.  (Doc. 65-1 at 580, ¶ 17.)  During those years, BBC successfully grew its operations and served hundreds of women.  (*Id.*)  But in March 2021, Farmer stepped away from the organization to attend to a private personal matter and resigned from BBC.  (*Id.* at 580, ¶¶ 17-18.)  In Farmer's resignation notice, she communicated to BBC proposed terms of her departure which included a proposed licensing agreement for certain "models" Farmer created before the inception of BBC, presumably, the Trademarked and Copyrighted Works.  (*Id.* at 580, ¶ 18; Doc. 65-4 at 605.)  In April 2021, Farmer and BBC circulated a draft letter of understanding which detailed Farmer's separation.  (Doc. 65-1 at 580, ¶ 18; Doc. 65-5 at 609.)  The letter of understanding required Farmer to "grant" BBC a license to use the Copyrighted Works.  (Doc. 65-1 at 580, ¶ 18; Doc. 65-5 at 609-10.)  The parties never signed the letter of understanding nor formalized any agreement.  (Doc. 65-1 at 580, ¶ 19.)

On May 28, 2021, BBC applied and obtained a trade registration from the Ohio Secretary of State for the trade name "Birthing Beautiful Communities" which previously expired and was not renewed.  (*Id.* at 581, ¶ 20.)  Because Farmer resigned, she was not involved in the registration and did not provide consent.  (*Id.*)  On or about the same time, BBC used, reproduced, published, publicly displayed, and distributed the Copyrighted Work.  (*Id.* at 581, ¶ 21.)  On November 24, 2023, Farmer sent an email to Jazmin Long ("Long"), BBC's CEO, and days later sent an email to BBC's Board of Directors.  (Doc. 65-1 at 581, ¶ 23; Doc. 65-7 at 617.)  In the email, Farmer accused Long of mismanaging BBC, abusing her authority as CEO, and providing subpar services to the community, among other personal grievances.  (Doc. 65-7 at

617.)  Farmer purported to accept Long's resignation.[3]  (*Id.*)  To Farmer, the communications put Long and the Board on notice that she considered BBC's use of the trade name "Birthing Beautiful Communities," the B Logo, and the use of the Copyrighted Works unauthorized because Farmer had not consented nor granted a license to BBC.  (Doc. 65-1 at 581, ¶ 23.)  BBC responded with a cease-and-desist letter.  (*Id.* at 581-82, ¶ 24.)  BBC continues to use the trade name "Birthing Beautiful Communities," the B Logo, and the Copyrighted Works.  (*Id.* at 582, ¶ 25.)

B.        **Procedural History**

On January 3, 2025, appearing *pro se*, Farmer initiated this action.  (Doc. 1.)  The original complaint named as defendants BBC as well as several individual defendants, some of whom were employees of BBC or were Board members.  (Doc. 1 at 1-2.)  The same day Farmer moved for a preliminary injunction.  (Doc. 3.)  Farmer then amended her complaint three times.  (Docs. 4, 8, 11.)  The amendments added defendants and claims based on the same factual allegations as the original complaint.  (*See id.*)  She also filed an Amended Motion for Preliminary Injunction.  (Doc. 5.)  On February 27, 2025, Farmer filed a supplement to her now Third Amended Complaint and a supplement to her now Second Motion for Preliminary Injunction.  (Doc. 20.)  After Farmer purportedly served the Third Amended Complaint on all named defendants, she moved for default judgment on March 24, 2025.  (Doc. 35.)  On April 1, 2025, notwithstanding alleged service issues, Defendants moved to dismiss the complaint, (Doc. 38), filed an answer

---

[3] Farmer sent this email more than two years after she resigned.  It is not clear under what authority Farmer believed she could accept Long's resignation.  The email signature represents Farmer as a "Board Member," but at that time, Farmer was not on the Board.  Further, at no point did Long did not tender her resignation to Farmer.

and counterclaims (Doc. 39), moved for a temporary restraining order (Doc. 40), and opposed Farmer's motion for default judgment (Doc. 41).[4]

On April 2, 2025, the Court held a telephonic status conference.  (Doc 60.)  During the status conference, the Court designated Farmer's Third Amended Complaint (Doc. 11) as the operative complaint.  (*Id.* at 543.)  The Court denied Farmer's motion for default judgment.  (*Id.* at 544.)  The Court also set a briefing schedule on Farmer's motion for a preliminary injunction. (*Id.*)  Lastly, as it relates to Defendants' motion for a temporary restraining order, the parties reached an agreement and Defendants withdrew the motion.  (*Id.* at 544-45.)

Following the status conference, Farmer moved for the appointment of counsel.  (Doc. 59.)  The Court granted that motion.  (Non-Document Orders dated 5/7/2025.)  Following the appointment of counsel, the Court held a second status conference on May 28, 2025.  At the conference, Farmer, through counsel, indicated she would be filing a fourth amended complaint and withdrawing the motion for a preliminary injunction, as well as stipulating to the dismissal of all individual defendants, leaving just BBC as a defendant.  (Non-Document Minute Order dated 5/28/2025.)  On June 27, 2025, Farmer stipulated to the dismissal of all individual defendants (Doc. 64) and moved for leave to file a Fourth Amended Complaint (Doc. 65).  On July 1, 2025, the Court ordered the dismissal of all individual defendants and granted Farmer's motion for leave to file a Fourth Amended Complaint.  (Doc. 66; Non-Document Order dated 7/1/2025.)

The Fourth Amended Complaint asserts four claims: (1) copyright infringement under 17 U.S.C. § 501 (Count One); (2) trademark infringement and unfair competition under 15 U.S.C.

---

[4] The reasons Defendants moved for a temporary restraining order are not relevant to the present motion.

§ 1125(a) (Count Two); (3) trademark infringement and unfair competition under Ohio common law (Count Three); and (4) deceptive trade practices under R.C. § 4165.02.  (Doc. 65-1 at 583-88, ¶¶ 33-66.)  Farmer seeks a permanent injunction prohibiting BBC from using any Copyrighted Work and the "Birthing Beautiful Communities" trademark with corresponding B Logo.  (*Id.* at 588.)  She also seeks profits received by BBC and damages sustained by Farmer because of the alleged unauthorized use of Farmer's trademarks and copyrights.  (*Id.* at 589-90.)  On July 18, 2025, BBC moved to dismiss the Fourth Amended Complaint in full.  (Doc. 67.)  Farmer opposed on August 18, 2025 (Doc. 70), and BBC replied on September 3, 2025 (Doc. 72).

## II.    LEGAL ANALYSIS

### A.    Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A Rule 12(b)(6) motion tests whether the complaint meets this standard.  To survive a Rule 12(b)(6) motion for failure to state a claim, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

When courts evaluate whether a complaint states a plausible claim, they must accept all factual allegations as true.  *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).  Courts must also

draw all reasonable inferences in favor of the plaintiff, and they must generally construe the complaint in the light most favorable to the plaintiff. *Id.* Courts do not accept legal conclusions or other conclusory allegations as true, *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)), and courts need not make unwarranted factual inferences, *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

**B.      Copyright Infringement (17 U.S.C. § 501 (Count One))**

Section 501(a) provides "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) . . . is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d. 358 (1991); *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024). "The first prong tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration. The second prong tests whether any copying occurred (a factual mater) and whether the portion of the work copied were entitled to copyright protection (a legal matter)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citations omitted). The plaintiff has the burden to show these elements. *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).

Under the Copyright Act, a "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. There are three elements for a work to qualify as a copyrightable compilation: "(1) the

collection and assembly of pre-existing material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an 'original' work of authorship." *Feist Publ'ns*, 499 U.S. at 357.  In this way, compiled works of other materials can qualify for copyright protection based on an author's contribution to the compilation.  *Id.*; *see also Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1184 (9th Cir. 2018).  If a work qualifies as a compilation, even if the underlying materials, facts, or data are not protected by copyright, the original work compiling them can be protected.  *Feist Publ'ns*, 499 U.S. at 348.

BBC argues the Copyrighted Works qualify as a compilation.  (Doc. 67 at 627-28.)  But, to BBC, the works individually are not protected under copyright law unless individually registered.  (*Id.* at 628.)  Here, Farmer has not individually registered the works.  (*Id.*)  Because BBC argues the Fourth Amended Complaint only pleads copyright infringement with respect to one of the works in the compilation, the "Perinatal Support Pipeline," it also argues Count One fails to state a claim because it is not a copyrighted work individually.  (*Id.* at 629.)  BBC also argues the Fourth Amended Complaint does not sufficiently plead infringement because it merely alleges facts consistent with liability.  (*Id.* at 630.)

In opposition, Farmer argues the copyright registration is not a compilation, but instead, a single work.  (Doc. 70 at 668.)  To Farmer, nothing in the copyright registration suggests it is six separate works rather than one.  (*Id.*)  She argues the registration covers a single work spanning across six topics and is not a compilation under trademark law.  (*Id.* at 668-69.)  In this way, BBC's arguments regarding compilations under trademark law do not apply.  (*Id.* at 669.)  And, in any event, Farmer argues the Fourth Amended Complaint pleads a copyright infringement

claim because she has established ownership through copyright registration and pleaded use or access.  (*Id.* at 670-71.)

BBC's argument regarding copyright compilations rests on the position that the Fourth Amended Complaint only pleads copyright infringement with respect to the "Perinatal Support Pipeline."  However, the Fourth Amended Complaint, taken as true and construed in Farmer's favor, adequately pleads copyright infringement with respect to the entire Copyrighted Works.  The Fourth Amended Complaint pleads BBC "continues to use, publish, publicly display, distribute, create derivative works of, and otherwise exploit the Farmer Copyrighted Works[.]" (Doc. 65-1 at 583, ¶ 37.)  It further pleads BBC is using the "Perinatal Support Pipeline" "in-person with its clients and online through its website" and "as a basis to apply for and obtain grants."  (*Id.*)  And the Fourth Amended Complaint alleges BBC, without authorization, "reproduced, published, publicly displayed, distributed, created derivative works of, and otherwise exploited the Farmer Copyrighted Works."  (*Id.* at ¶ 35.)  These allegations sufficiently plead ownership of a copyright, which is presumptively established by the registration.  And these allegations sufficiently allege copying both as a factual and legal matter.  At this stage, BBC's arguments regarding the registration at issue, and whether it is a compilation or individual works, is unpersuasive.

To be sure, the Fourth Amended Complaint highlights the alleged improper use of the "Perinatal Support Pipeline," but it also alleges improper use of the other items listed in the copyright registration.  Therefore, BBC's argument the Fourth Amended Complaint only pleads infringement with respect to the "Perinatal Support Pipeline" is unpersuasive.  Because the Fourth Amended Complaint sufficiently pleads copyright infringement with respect to each aspect of the copyright registration, BBC's arguments regarding compilations fail at this stage.

### C.      Trademark Infringement (15 U.S.C. § 1125(a)) (Count Two)

Section 1125(a) of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  "Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). Relevant here, the elements for infringement under § 1125(a)(1)(A) are: "(1) ownership of a specific service mark in connection with specific services; (2) continuous use of the service mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion amongst customers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 355 (6th Cir. 1998) (quoting *Homeowners Grp., Inc. v. Home Mktg. Specialists*, 931 F.2d 1100, 1105 (6th Cir. 1991)).[5]  "Thus, whether alleging infringement of a

---

[5] BBC identified *Allard* as the controlling case which provides the elements for Farmer's claim. Farmer does not contest, nor put forth her own, legal standard by which her claim should be considered.  Farmer asserts a claim under "§ 1125(a)."  But she does not specify which subsection her claim falls under, that being either § 1125(a)(1)(A) for false association and designation or § 1125(a)(1)(B) for false advertising.  From her complaint, it appears she is

registered trademark, pursuant to 15 U.S.C. § 1114(1), or infringement of an unregistered trademark, pursuant to 15 U.S.C. § 1125(a)(1), it is clear that a plaintiff must show that it has actually used the designation at issue *as a trademark*, and that the defendant has also used the same or a similar designation *as a trademark*." *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998) (emphasis in original).  This is so because it is a "bedrock principle[] of trademark law" that trademark ownership "is not acquired by federal or state registration," but rather "from prior appropriation and actual use in the market." *Allard*, 146 F.3d at 356 (quoting *Homeowners*, 931 F.2d at 1105).

A trademark owner can license a trademark to another.  A trademark license can be written, oral, or implied.  *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 1006 (W.D. Ky. 2017) (citing *Big Cola Corp. v. World Bottling Co., Ltd.*, 134 F.2d 718, 721 (6th Cir. 1943)); *see also City of New York v. Henriquez*, 768 F. Supp. 3d 388, 413 (E.D.N.Y. 2025) ("In the absence of a written or oral licensing agreement, 'a trademark license can sometimes be implied from the conduct of the parties.'") (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:43.50 (5th Ed. 2025)).  When the licensee uses the trademark, the benefits inure to the licensor.  15 U.S.C. § 1055 (use by a licensee "shall inure to the benefit of the registrant").  However, because the bedrock principal in trademark law is use of the trademark, a license is only "permissible so long as the license agreement provides for adequate control by the licensor of the nature and quality of the goods or services." *Doeblers' Penn. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823 (3d Cir. 2006).  When a trademark owner exercises such control, "[o]wnership rights in a trademark or service mark can be acquired *and maintained* through the

---

asserting a claim under § 1125(a)(1)(A).  The elements as stated in *Allard* relate to § 1125(a)(1)(A) claims.  Since Farmer does not dispute the legal elements or standard, the Court will use that standard.

use of the mark by a controlled licensee even when the first and only use of the mark was made, and is being made, by the licensee." *Ausable River Trading Post, LLC v. Dovetail Sols., Inc.*, 902 F.3d 567, 572 (6th Cir. 2018) (quoting McCarthy § 18:46). If a trademark owner fails to exercise such control, it has offered a "naked license" and forfeits its ownership rights. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 846 (6th Cir. 2013) ("Under trademark law, where a licensor does not exercise reasonable quality control over a licensee, the mark is deemed abandoned due to the naked licensing.") (citations and quotations omitted). As a corollary, "trademarks can be abandoned through mere non-use, as long as there is no intent to reuse." *Id.* at 844 (citing 15 U.S.C. § 1127 (abandonment occurs "[w]hen its use has been discontinued with intent not to resume such use")).

BBC argues Farmer's trademark infringement claim fails because she does not plead either "continuous use of the service mark" or "a likelihood of confusion." (Doc. 67 at 625.) Specifically, BBC argues Farmer has not, and could not, allege she continually used the trademark "Birthing Beautiful Communities" and associated B Logo. (*Id.*) To BBC, Farmer has not alleged she continued using the trademark in her personal capacity since allegedly allowing BBC to use the mark in 2015. (*Id.*) In this way, BBC argues Farmer has not alleged simultaneous use of the mark, and therefore, has failed to allege the second element of a trademark infringement claim under *Allard*. (*Id.*) In the same vein, BBC argues Farmer has not alleged confusion since without continued simultaneous use, no consumers could be confused about the use of the trademark. (*Id.*) Even further, BBC argues the complaint lacks any allegations Farmer personally used the mark at any time outside of her work for BBC. (*Id.* at 626-27.)

Farmer argues she has properly alleged a trademark infringement claim because she alleges BBC's use of the "Birthing Beautiful Communities" and B Logo is likely to lead to confusion "as to the source of those services or as to their affiliation or connection with her." (Doc. 70 at 665.)  To Farmer, the law does not require her to personally use the trademark because she "granted a license to BBC to use her trademarks." (*Id.* at 665-66.)  Farmer argues the complaint alleges she personally used the trademarks prior to the formation of BBC and when she formed BBC, she gave BBC consent to use the trademarks. (*Id.* at 666.)  She argues the law does not require her to contemporaneously use the trademark because she licensed it to BBC. (*Id.* at 667.)  Farmer then argues when she resigned from BBC, the license was terminated and the continued use by BBC of the trademark was unauthorized. (*Id.* at 667-68.)

In reply, BBC argues Farmer does not allege in the complaint she ever granted BBC a license for the trademark. (Doc. 72 at 705.)  That is, the complaint lacks any allegations relating to a license and only mentions "consent" which is not the same as a license. (*Id.* at 706.)  But even if consent could be construed as a license, BBC argues Farmer's claim still fails because it would be a "naked license" precluded under the "related companies doctrine." (*Id.*)  In any event, BBC argues any license or consent was terminated when Farmer resigned, and since that time, she has not pleaded any use of the trademark. (*Id.* at 707.)  To BBC, because trademark ownership is derived from use, Farmer's claim must fail. (*Id.*)

Turning first to the license issue, BBC argues any "consent" Farmer gave cannot be construed as a "license."  True, consent agreements are separate from licensing agreements under trademark law. *See* McCarthy § 18:38 ("A consent agreement is neither an assignment nor a license.")  But from the facts alleged, the Fourth Amended Complaint does not attempt to plead a consent agreement, but instead, a license through consent.  Nomenclature aside, Farmer pleads

she gave her consent, which construed in her favor, is an allegation that she provided an oral license to BBC, and if not, at least an implied license. *Deere*, 239 F. Supp. 3d at 1006 (describing test for implied license as "objective" in reviewing the course of conduct of the parties). Thus, taking the allegations as true, Farmer granted a license to BBC from 2015 until her resignation to use the trademarks. The license ended with her resignation in 2021.

Next consider BBC's "continued use" argument. The parties agree a bedrock principal of trademark ownership is "use in the market." *Allard*, 146 F.3d at 356 (quoting *Homeowners*, 931 F.2d at 1105). First, BBC asserts Farmer has not used the trademark since 2015 when she allegedly granted rights to BBC to use the mark. (Doc. 67 at 625.) But that argument fails because, as explained above, "[o]wnership rights in a trademark or service mark can be acquired *and maintained* through the use of the mark by a controlled licensee even when the first and only use of the mark was made, and is being made, by the licensee." *Ausable River Trading Post*, 902 F.3d at 572 (quoting McCarthy § 18:46). For example, the Sixth Circuit explained "[a] partner may be the owner of a trade-mark used by the partnership; if he licenses the partnership to use his trade-mark, he does not thereby grant a naked license, merely because he discontinues the operation of an individual business using the mark." *E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512, 521 (6th Cir. 1943). That is, Farmer did not need to personally use the trademark during the time she licensed it to BBC.

Second, BBC argues since resigning from BBC, Farmer has not "continuously used" the trademark. (Doc. 72 at 706.) BBC points out the Fourth Amended Complaint does not plead any

use from 2021 through 2025.[6]  (*Id.*)  BBC essentially argues Farmer abandoned the trademark through non-use.  The Lanham Act states:

> A mark shall be deemed to be "abandoned" if []:
>
> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127.  Typically, abandonment of a trademark is a fact issue not susceptible to resolution on a motion to dismiss.  *Stilson & Assocs., Inc. v. Stilson Consulting Grp., LLC*, 129 F. App'x 993, 996 (6th Cir. 2005) ("abandonment is a question of fact"); *see also* McCarthy § 17:5 (same).  And "because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a stringent, heavy, or strict burden of proof."  *Stilson*, 129 F. App'x at 995 (citation and quotations omitted).  Here, while the Fourth Amended Complaint lacks allegations as to use, it cannot be determined at this stage if Farmer did not intend to resume such use.

In sum, taking all well-pleaded allegations as true, and construing all facts in Farmer's favor, the Fourth Amended Complaint sufficiently pleads a claim under the Lanham Act.  The Fourth Amended Complaint pleads on or around April 12, 2015, Farmer began using the name "Birthing Beautiful Communities."  (Doc. 65-1 at 578-79, ¶¶ 14-15.)  On July 16, 2015, the Ohio Secretary of State issued a trade named registration to Farmer.  (*Id.* at 578-79, ¶ 14.)  On October 6, 2015, Farmer commissioned the B Logo.  (*Id.* at 579, ¶ 14.)  Farmer alleges she "provided her consent" to BBC to use "Birthing Beautiful Communities" and the B Logo.  (*Id.* at 579, ¶ 15.)  She terminated that consent when she resigned in April 2021.  (*Id.* at 580, ¶ 18.)  Farmer

---

[6] Note that Farmer does not rely on a license argument for 2021 through 2025.  Accordingly, she could not have provided a "naked license" to BBC.

construes this "consent" as a "license."  (Doc. 70 at 665, 667.)  To Farmer, she licensed the trademark to BBC until her resignation.  Thus, since then, BBC has been infringing on her trademark.  While the Fourth Amended Complaint fails to plead any use of the trademark by Farmer, it cannot be determined at this stage whether she abandoned the trademark.  *See* McCarthy § 16:36 ("Where an individual adopts and uses a mark and later orally licenses its use to a corporation of which he or she is the president, the individual, not the corporation, is the owner of the mark and the proper party to apply for registration.").

> **D.** **State Law Claims**

Count Three alleges trademark infringement and unfair competition under Ohio common law.  (Doc. 65-1 at 586, ¶¶ 54-60.)  And Count Four alleges a violation of the Ohio Deceptive Trade Practices Act, § 4165.02.  (*Id.* at 587, ¶¶ 61-66.)  These claims have the same standards as federal law under the Lanham Act discussed above.  *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 288 (6th Cir. 1997).  Therefore, for the same reasons above, the motion to dismiss these claims should be denied.

## III. CONCLUSION

For the reasons above, Defendant Birthing Beautiful Communities' Motion to Dismiss (Doc. 67) is DENIED.

**IT IS SO ORDERED.**

Date:   March 12, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE